IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

DEREK GREEN,

Plaintiff,

vs.

TYLER FREDERICKSON, personally,
TIM TRABOSH, personally,

Defendants.

Case No. 6.15-cv-01238-AA
**OPINION AND ORDER**

---

Aiken, District Judge:

Plaintiff Derek Green brings this action against defendants Tyler Frederickson and Tim Trabosh, both Marion County Sheriff's Deputies. Plaintiff asserts two claims against defendants: (1) a claim under 42 U.S.C. § 1983 for use of excessive force in violation of the Fourth Amendment, and (2) a battery claim under Oregon common law. Now before the Court are the parties' Motions for Summary Judgment (Docs. 40, 49). For the reasons discussed below, defendants' motion is GRANTED with respect to plaintiff's battery claim and the motions are DENIED in all other respects.

## BACKGROUND

On July 3, 2013, plaintiff went to the St. Paul Rodeo (the "Rodeo") with his friend, Mr. Kiersey. Plaintiff admits that he drank heavily that night at Keirsey's house before the Rodeo, at the Rodeo, and at the Tack Room Salon ("the bar"), where plaintiff and Kiersey spent about an hour after the Rodeo. The men left the bar after Kiersey was cut off by the bartender and told to leave. Outside the bar, plaintiff, who was 6'2" and almost 200 pounds at the time, got into an altercation with Deputies Trabosh and Frederickson, who were providing additional security for the Rodeo. During the incident, Deputy Trabosh physically restrained plaintiff, and plaintiff was eventually arrested.

The parties offer conflicting accounts of what happened just before and during that altercation.

According to plaintiff, two "security guards" "shoved" him and Kiersey out of the bar. Green Dep. (Doc. 41, Ex. 1) 40:1–18; 43:17–21. Plaintiff cooperated with the security guards, "tried to escort [Kiersey] out, and did so successfully." Green Decl. (Doc. 50) ¶ 3. Once he was outside the bar, plaintiff was grabbed from behind "out of the blue," *id*. at ¶ 4, and then "got put in the choke hold."[1] Green Dep. 44:8. While in the chokehold, plaintiff "could not breathe and was struggling for [his] life and breath." *Id*. at ¶ 6. In his deposition, plaintiff explained: "I remember thinking that it was somebody from the crowd because like there was a big crowd and they were like trying to like jump me." *Id*. at 43:2–5. According to plaintiff, Deputy "Trabosh

[1] At times, plaintiff has also referred to this restraint as a "headlock." *See* Compl. ¶ 9; Green Dep. 42: 13–21.

said not a word" to him before restraining him, Green Decl. ¶ 7, and he "was given no lawful orders and hence could not disobey them." *Id.* at ¶ 5.

According to Deputies Trabosh and Frederickson, they "were flagged down by security staff at the front of the bar" to help with plaintiff and Kiersey. Trabosh Dep. (Doc. 54, Ex. 2) 42:5–14. Deputy Frederickson saw plaintiff "pushing and shoving, yelling, with several security guards" and stated that it "looked like [plaintiff] was fighting with the bouncers." Frederickson Dep. (Doc. 54, Ex. 3) 19:15–16; 20:13.

Deputy Trabosh was "unsure if there was some type of assault that happened inside, a disorderly conduct or a criminal trespass with [plaintiff] since he was being physically taken out of the bar." Trabosh Dep. 42:20–24. Plaintiff was not armed, and Deputy Trabosh had "no indication at that point" that plaintiff was armed. *Id.* at 41:14–17.

Deputy Trabosh identified himself and "attempted to talk with [plaintiff] and see what the whole situation was." *Id.* at 43:2–3. Although Deputy Trabosh did not "perceive an immediate physical threat" from plaintiff, *id.* at 45:19–20, plaintiff failed to "compl[y] with [his] simple questions to come outside the bar and speak with [him]," tried to re-enter the bar, and was "extremely belligerent and loud." Trabosh Dep. 44:3–15. Deputy Frederickson explained that Deputy Trabosh "grabbed [plaintiff] in what looked like an attempt to calm him down." Frederickson Dep. 22:19–20. But because plaintiff was "actively resisting" by "flailing and [making] outrageous body movements on constant jumping up and down," Deputy Trabosh used a different restraint. Trabosh Dep. 41:19–20, 45:8–15; Frederickson Dep. 28:1.

While Deputy Trabosh restrained plaintiff, Deputy Fredrickson handcuffed him for "suspicion of potentially trespass, potentially disorderly conduct." Frederickson Dep. 26:2–4; 28:9–14. Plaintiff was then "handed off to other officers" with whom he "had a scuffle," and who placed him under arrest. *Id.* at 29:16–18; Green Decl. ¶ 7.

Deputy Trabosh asserts that the second restraint was not a "chokehold" because he was "not applying pressure to [plaintiff's] neck at all." Trabosh Dep. 46:23-24. Defendants also offer the deposition testimony of Nicholas Hunter, who appears to be employed by Marion County and involved in training Sheriff's deputies. Hunter Dep. (Doc. 41 Ex. 4).[2] Hunter explains that there are two types of chokeholds, a "lateral vascular," which it aimed at "stopping the blood flow to the brain[,]" and "a chokehold in the traditional sense," which involves "asphyxiation where you're shutting off the airway." *Id.* at 15:23–16:9. Marion County deputies are not trained to use either. *Id.* at 16:10–11.

Plaintiff also submitted a video of the incident. Green Video (by email) (Doc. 51 Ex. 1). The video starts at the moment of the alleged chokehold. The video shows Deputy Trabosh standing behind plaintiff. Deputy Trabosh's arm encircles plaintiff's neck. His upper arm passes over plaintiff's right shoulder. And Deputy Trabosh's elbow is bent so that his forearm crosses under plaintiff's chin, then passes over plaintiff's left shoulder. Deputy Trabosh holds a taser in his right hand. Plaintiff is leaning backwards against Deputy Trabosh with both hands in the air and appears

[2] Defendants do not explain who Hunter is or his title, and that information could not be gleaned from the excerpt of his deposition.

to be off balance because of the backwards pull. Deputy Frederickson then moves behind plaintiff, presumably to handcuff him.

In his deposition, Hunter viewed the video and still photos from the video. He saw that Deputy Trabosh's arm was under plaintiff's chin but could not tell whether it was touching plaintiff's neck. Hunter Dep. 17:2–8. Hunter testified that "[t]his is not a chokehold" and explained "[f]or a chokehold to take place, you have to restrict airways or, like we talked about earlier with a lateral vascular neck restraint, you have to restrict blood flow." *Id.* at 17:12–16.

**LEGAL STANDARDS**

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party moving for summary judgment who does not have the ultimate burden of persuasion at trial must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102 (9th Cir. 2000). A party who moves for summary judgment who does bear the burden of proof at trial must produce evidence that would entitle him or her to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden,* 213 F.3d 474, 480 (9th Cir. 2000).

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

**DISCUSSION**

Plaintiff moves for partial summary judgment on both claims. Defendants move for summary judgment on the § 1983 claim on qualified immunity grounds and on the state law battery claim based on Oregon's officer justification defense, officer safety concerns, and provisions of the Oregon Tort Claims Act.

I. *§ 1983 Excessive Force Claim*

To prevail on a claim under § 1983, a plaintiff must demonstrate that: (1) the conduct complained of deprived him or her of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff moves for partial summary judgment on his § 1983 claim. He argues that Deputy Trabosh violated his Fourth Amendment rights by applying a chokehold when plaintiff was not actively resisting the deputies. Plaintiff also argues that

Deputy Frederickson had a duty to intercede to stop the constitutional violation but failed to do so.

Defendants contend that they are entitled to summary judgment on this claim because plaintiff cannot establish that Deputy Trabosh used excessive force in violation of plaintiff's Fourth Amendment rights or that Deputy Frederickson had a duty to intercede. Defendants assert that Deputy Trabosh did not use a chokehold and they contend that the level of restraint that he did apply was appropriate under the circumstances.

Claims of excessive force in the context of an arrest or an investigatory stop "invok[e] the protections of the Fourth Amendment, which guarantees citizens the right to be secure in their persons against unreasonable seizures of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (internal quotation marks and ellipses omitted). Further, "[a] law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (9th Cir. 1988).

In evaluating an excessive force § 1983 claim, a court asks "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Graham*, 490 U.S. at 397 (internal quotation marks omitted). A court must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id*. at 396 (internal quotation marks omitted).

"[T]he excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom[.]" *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012). This case is no exception. Here, genuine disputes of fact preclude summary judgment in either party's favor on this issue.

Viewing the evidence in the light most favorable to plaintiff, Deputy Trabosh approached plaintiff from behind while plaintiff was peacefully escorting his friend out of the bar and, without warning, grabbed plaintiff and then placed him in a chokehold. During the chokehold, plaintiff could not breathe and did not resist. The Ninth Circuit has repeatedly found that the use of a chokehold on a non-resisting person violates the Fourth Amendment's prohibition on the use of excessive force. *Tuuamalelo v. Greene*, 946 F.3d 471, 478 (9th Cir. 2019) (observing that "[t]here is robust consensus among the circuits that the use of a chokehold on a non-resisting person violates the Fourth Amendment" and collecting cases); *Barnard v. Theobald*, 721 F.3d 1069, 1076 (9th Cir. 2013); *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir. 2003).

Although Deputy Trabosh claims that he did not use a chokehold because he did not put any pressure on plaintiff's neck during the maneuver, plaintiff claims that his breathing was restricted. Hunter's testimony, which defendants offered to support their motion, acknowledges that one type of chokehold involves shutting off the airway. Although Hunter also testified that the restraint was not a chokehold because a chokehold involves restricted airways or blood flow, he did not explain how he could tell that the restraint did not involve either. Thus, whether the restraint

maneuver was a chokehold or some other type of restraint turns on credibility determinations and other means of weighing of evidence that are not appropriate for summary judgment. For purposes of defendant's summary judgment motion, a reasonable jury could find that the maneuver was a chokehold.

Also, even accepting the deputies' assertions that bar security had flagged the deputies down for help with a possible assault and that plaintiff did not comply with Deputy Trabosh's orders, a reasonable jury could find that Deputy Trabosh's use of a chokehold was excessive under those circumstances. *See Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012) ("A failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force."). Thus, a reasonable jury could also find that Deputy Frederickson had a duty to intervene to stop Deputy Trabosh's violation of plaintiff's rights. Accordingly, defendants are not entitled to a ruling, as a matter of law, that they did not violate plaintiff's rights.

Plaintiff is likewise is not entitled to a ruling that his Fourth Amendment rights were violated. Viewing the evidence in the light most favorable to defendants, they were flagged down by bar security who were physically escorting plaintiff out of the bar. They saw plaintiff resisting and yelling at security and believed that plaintiff may have been involved in an assault, disorderly conduct, criminal trespass, or other offense. Deputy Trabosh attempted to talk to plaintiff, asking plaintiff to come out of the bar to speak with him. When plaintiff refused to comply with Deputy Trabosh's commands and attempted to re-enter the bar, Deputy Trabosh attempted to restrain

him. And when plaintiff, who was taller and heavier than Deputy Trabosh, actively resisted that restraint, Deputy Trabosh used a second restraint, encircling plaintiff's neck with his arm without applying pressure to plaintiff's neck or restricting plaintiff's breathing, which allowed Deputy Frederickson to handcuff plaintiff. Under those circumstances, a reasonable jury could find that Deputy Trabosh used an objectively reasonable level of force against plaintiff and that Deputy Frederickson had no duty to stop Deputy Trabosh.

Defendants also argue that they are entitled to qualified immunity. Qualified immunity protects government officials from liability for civil damages "unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). To be clearly established, "[t]he contours of the right must be sufficiently clear" at the time of the incident, "that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, a defendant must have "fair and clear warning" that the alleged conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Recently, in *Tuuamalelalo v. Green*, the Ninth Circuit observed that the circuit has long recognized that the use of a chokehold on a non-resisting person is unconstitutional. 946 F.3d at 477. The court observed:

> Our decision in *Barnard v. Theobald*, 721 F.3d 1069 (9th Cir. 2013), squarely addressed the constitutionality of the use of a chokehold on a non-resisting person. In that case, officers placed the non-resisting, restrained plaintiff in a chokehold and then pepper sprayed him. *Id.* at 1072–73. We affirmed the jury's finding that the officers' use of force violated the Fourth Amendment. *Id.* at 1076. Even earlier, in *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir. 2003), we had held that "any reasonable person ... should have

> known that squeezing the breath from a compliant, prone, and handcuffed individual despite his pleas for air involves a degree of force that is greater than reasonable." . . .
>
> . . . Given the state of the law in our circuit, it was clearly established that the use of a chokehold on a non-resisting, restrained person violates the Fourth Amendment's prohibition on the use of excessive force.

*Id*. Although the incident underlying the plaintiff's claims in *Tuuamalelalo* occurred in 2014 and *Barnard* was decided in July 2013, the court's reliance on *Drummond* demonstrates that the right of a non-resisting, restrained person to be free from the use of a chokehold was clearly established since at least 2003. Further, "[t]he Fourth Amendment right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013). The Ninth Circuit has characterized as non-trivial any force that is capable of causing death or serious injury. *Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001).

Based on plaintiff's testimony that he could not breathe during the chokehold, a jury could find that the amount of force Deputy Trabosh used against him was "non-trivial." And, viewing plaintiff's version of the facts in the light most favorable to him, plaintiff was not resisting and was restrained at the time of the chokehold, plaintiff was not resisting Deputy Trabosh. Accordingly, defendants' qualified immunity argument fails.

II. *State Law Battery Claim*

Plaintiff alleges that defendants committed a battery against him "when they put [plaintiff] in a headlock and took him to the ground outside the bar." Compl. ¶ 19.

Both parties argue that they are entitled to summary judgment on this claim. Because the Court agrees with defendants that the Oregon Tort Claims Act ("OTCA"), ORS 30.260 to 30.300, bars the claim, the Court concludes that defendants are entitled to summary judgment on that basis alone and will not address the parties' other arguments.

The OTCA provides

> [t]he sole cause of action for a tort committed by officers, employees, or agents of a public body acting within the scope of their employment or duties . . . is an action under [the OTCA]. The remedy provided by [the OTCA] is exclusive of any other action against such officer, employee or agent of a public body . . . . No other form of civil action is permitted.

ORS 30.265(2). Plaintiff does not allege battery through the OTCA, but he asserts that defendants' conduct was arguably outside the scope of their employment or duties because it violated Marion County policy in several ways.

Under Oregon law, three requirements must be met for an official to have acted within the scope of their employment or duties: "'(1) the act must occur substantially within the time and space limits authorized by the employment; (2) the employee must be motivated, at least in part, by a purpose to serve the employer, and (3) the act must be of a kind which the employee was hired to perform.'" *See Johnson v. Oregon State Bd. of Higher Educ.*, 272 Or. App. 710, 717 (2015) (quoting *Chesterman v. Barmon*, 305 Or. 439, 442 (1988)).

Plaintiff acknowledges that defendants' conduct took place within the time and space limits of their employment, but argues that their actions were "not in furtherance of their official duties" because the use of force was "out of policy" and

"not reported per policy." Pl. Resp. (doc. 48) at 3. In his deposition, Deputy Trabosh testified that he did not file a use of force report after the incident. Trabosh Dep. 18: 23–24, 19:2–5. And Deputy Frederickson testified, in his deposition, that after the incident, he was disciplined for failing to file a use of force report. *Id.* at 61:6–11.

When considering scope of employment for claims involving intentional torts, like battery, however, Oregon courts focus, not on the allegedly tortious conduct, but on the actions that led up to it. Specifically, courts analyze whether non-tortious conduct that "resulted in the acts that caused injury" satisfies the second and third requirements. *Fearing v. Bucher*, 328 Or. 367, 374–75 (1999). "[T]he performance of the employee's duties must be a necessary precursor to the misconduct and . . . the misconduct must be a direct outgrowth of, and have been engendered by, conduct that was within the scope of the employee's employment." *Barrington ex rel. Barrington v. Sandberg*, 164 Or. App. 292, 295 (1999).

Here, the evidence shows that defendants were on duty at the time of the incident, assisting with Rodeo security. Defendants became involved with plaintiff at the bar security staff's request. There is no question that defendants' response to that request motivated, at least in part, by a desire to serve the Sheriff's Office and was of the kind they were hired to perform. And because the alleged battery occurred during defendants' attempt to help bar security deal with plaintiff, there is no question that the alleged battery was a "direct outgrowth" of conduct within the scope of defendants' employment and duties. The Court, therefore, concludes that there is no evidence from which a jury could find that defendants were not acting within the

scope of their employment and duties. Accordingly, plaintiff's only remedy for the alleged battery is through the OTCA and his common law battery claim must be dismissed.

**CONCLUSION**

For the reasons set forth above, plaintiff's Motion for Partial Summary Judgment (doc. 49) is DENIED and defendants' Motion for Summary Judgment (doc. 40) is DENIED in part and GRANTED in part.

IT IS SO ORDERED.

Dated this 8th day of May 2020.

/s/Ann Aiken
Ann Aiken
United States District Judge